In re the Honorable Errlinda CASTIL-
LO, Justice, the Court of Appeals for
the Thirteenth District of Texas, in
her Official Capacity, Relator.

No. 06–0314.

Supreme Court of Texas.

Aug. 31, 2006.

James A. Baker, Hughes & Luce, LLP,
Dallas, Ruth A. Kollman, Corpus Christi,
for relator.

Cecile Foy Gsanger, Corpus Christi, Joe
R. Greenhill, Thomas R. Phillips, Baker
Botts L.L.P., Greg Abbott, Attorney Gen-
eral of Texas, Rafael Edward Cruz, Ryan
D. Clinton, Bill Davis, Office of the Attor-
ney General of Texas, Austin, Macey Rea-
soner Stokes, Houston, for respondent.

Chief Justice JEFFERSON delivered
the opinion of the Court.

In this original proceeding, Justice Errl-
inda Castillo of the Thirteenth Court of
Appeals seeks writs of mandamus and pro-
hibition ordering the Thirteenth Court to
vacate an exit plan devised for her by the
other justices of that court after Justice
Castillo lost her reelection bid. We deny
the petitions.

In November 2000, Justice Castillo was
elected as a justice of the Thirteenth Court
of Appeals for a term running from Janu-
ary 1, 2001 through December 31, 2006.
Although she sought election to a second
term, she lost her reelection bid to a chal-
lenger in the Democratic Party primary on
March 7, 2006. Shortly thereafter, on
April 6, 2006, the Thirteenth Court held a
judges' meeting which Justice Castillo did
not attend. In her absence, the court
decided that, after May 31, 2006, Justice
Castillo would not be assigned to the
court's panels [1] to hear appeals; instead, a
visiting judge would sit in her place. As a

---

**1.** The Thirteenth Court is composed of six
justices, each of whom rotates among two
randomly assigned, three-member panels.

result, Justice Castillo would not receive initial writing responsibility for opinions in appeals heard by the Thirteenth Court. Rather, she would be assigned to original proceedings, with other members of the court rotating on the original proceedings panel with her. Justice Castillo would also act as the motions judge between June and the end of her term.

Justice Castillo filed a petition seeking writs of mandamus and prohibition, asking that we: (1) prohibit the Thirteenth Court from excluding her from case assignments after May 31, 2006; (2) order the court to permit her to draw for panel and writing assignments; and (3) prohibit the court from assigning a visiting judge in her place. She argued that the exit plan infringed on her right to complete her term as justice on the court of appeals and, in doing so, violated the Texas Constitution, state statutes, and the court of appeals' administrative rules.

After Justice Castillo filed her petition, the Thirteenth Court held another meeting, this one attended by Justice Castillo. At this May 3 meeting, the court rescinded the April 6 plan and implemented a modified exit plan.[2] Under the modified plan, Justice Castillo would participate in the draw for panel assignments for the summer and fall terms and would be eligible to draw for majority-opinion assignments for the summer term. The court withdrew its request for the assignment of a visiting judge to serve in Justice Castillo's place. Beginning in the fall term, however, nei-

ther Justice Castillo nor Justice Hinojosa[3] would be assigned initial responsibility for drafting majority opinions. According to the Thirteenth Court, Justice Castillo's exclusion was necessary because she was allegedly thirty-eight cases behind on her work. Justice Castillo hotly disputed this contention, noting that the thirty-eight matters assigned to her are a "docket of current cases." Justice Castillo asserted that, as of June 2, 2006, she had a docket of no more than eleven current cases that she expected to "zero out" by August 31, 2006.

As additional support for the modified plan, the court observed that Justice Castillo's remaining tenure on the court involved significantly less time than the approximately seven months it normally takes the court to issue an opinion in a civil case. Nonetheless, the court decided that if Justice Castillo completed her work by the end of the summer term on August 31, she would be assigned more work on an ad hoc basis. The court then drew for panel assignments for the summer and fall terms and Justice Castillo was randomly assigned to Panel B for the summer term and Panel A for the fall.[4]

After modifying the exit plan, the Thirteenth Court moved to dismiss Justice Castillo's petition without prejudice, contending, among other things, that she could not establish that the new plan violated any constitutional provision, statute, or administrative rule. Justice Castillo

---

2. While the Court voted in favor of this action, Justice Castillo, on the advice of counsel, stated that she would abstain from voting to preserve this Court's jurisdiction over this original proceeding.

3. Justice Hinojosa faces an opponent in the November election.

4. The panel assignments are:
   *Summer Term*

Panel A: Justices Hinojosa, Rodriguez, and Garza
Panel B: Chief Justice Valdez and Justices Yanez and Castillo
*Fall Term*
Panel A: Chief Justice Valdez and Justices Hinojosa and Castillo
Panel B: Justices Yanez, Rodriguez, and Garza

then filed a supplemental petition for writ of prohibition, asking us to prohibit the Thirteenth Court from (1) suspending its established internal administrative rules; (2) eliminating her from case assignments and writing assignments after September 1 and assigning cases and opinions on an ad hoc basis; and (3) "otherwise interfering with [Justice Castillo's] exercise of her constitutional rights and powers."

■ This Court has a constitutional obligation to supervise and administer the judicial branch. TEX. CONST. art. V, §§ 3, 31. Pursuant to this obligation, we "have supervisory and administrative control over the judicial branch and [are] responsible for the orderly and efficient administration of justice." TEX. GOV'T CODE § 74.021. We also have inherent power to protect and preserve the proper administration of the judicial system. *Vondy v. Comm'ns Court of Uvalde County*, 620 S.W.2d 104, 109 (Tex.1981). In this role, we may issue writs to compel courts of appeals to perform non-discretionary acts when the law so requires. TEX. GOV'T CODE § 22.002; *see O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 95 (Tex.1992)(conditionally granting writ of mandamus to allow an appellate court justice to file a dissent from the denial of a motion for en banc consideration).

■ The actions taken at the May 3 judges' meeting, and the resulting exit plan, moot many of Justice Castillo's original complaints. The Thirteenth Court now correctly agrees that Justice Castillo, like every other justice on the court, may vote on cases heard by her panel; draft concurring or dissenting opinions in any cause in which she participated in the decision; vote on motions for rehearing; participate in oral argument; participate in original proceedings and motions; and discuss cases with her fellow justices. The court also concedes, appropriately, that Justice Castillo is entitled to write proposed majority opinions which, if joined by another justice, would become the opinion of the court.

The modified plan does, however, alter Justice Castillo's role on the court in that she has been excluded from the initial majority-opinion assignment draw for the fall term. Justice Castillo contends, therefore, that the modified exit plan violates article V, section 6 of the Texas Constitution, which establishes courts of appeals and authorizes them to "sit in sections as authorized by law." TEX. CONST. art. V, § 6. In addition, Justice Castillo asserts that the modified exit plan contravenes section 22.222(b) of the Government Code, which provides:

> If more than one panel is used, the court of appeals shall establish rules to periodically rotate the justices among the panels. Permanent civil panels and criminal panels without rotation may not be established.

TEX. GOV'T CODE § 22.222(b). While these provisions themselves do not grant Justice Castillo the right to be included in the majority-opinion assignment draw, she urges that when combined with the Thirteenth Court's administrative rules, her entitlement to be assigned majority opinions becomes clear.

Administrative Rule 4 provides, in relevant part, that:

> Panels will be chosen so that the memberships will be known for two three month terms, i.e., the current term and the next. At the beginning of each term, the Justices will draw for membership on the panels for the next term.
>
> Cases shall be assigned to the panels as set forth in Rule 6.

Administrative Rule 6(B) provides, in relevant part:

All Justices, without exception, shall ... randomly draw for panel membership. After panel membership is so chosen, seniority on the panel shall be determined. The Justices shall then randomly draw writing assignments.

We disagree that these rules establish a right for a justice to be assigned initial drafting responsibility for majority opinions. While Rule 6 provides that "Justices" will randomly draw writing assignments, the rule neither states that "all Justices" shall draw[5] nor that its provisions may not be temporarily suspended. It appears, in fact, that the rules themselves contemplate just such a suspension. *See* 13th Court Administrative Rule 24 (providing that "[b]y majority vote of the Court *en banc*, these rules may be amended or temporarily suspended"). The Thirteenth Court employed this practice at the May 3 meeting. Although the modified plan itself may not be the most prudent model for a court endeavoring to clear its docket, we conclude that the court acted within its discretion in adopting it.

Both state and federal appellate courts engage in a variety of practices for assigning cases and managing their dockets. Some assign cases randomly, others by seniority, still others by assignment of the chief justice. *See, e.g.*, Melinda Gann Hall, *Opinion Assignment Procedures and Conference Practices in State Supreme Courts*, 73 JUDICATURE 209, 210–11 (1990); Sandra Day O'Connor, *Remembering Rehnquist*, 31 JOURNAL OF SUPREME COURT HISTORY 5, 7 (2006). Courts must have some leeway in making such assignments to help maintain a current docket. Whether we deem the modified plan at issue here advisable or not, we must leave it to the Thirteenth Court to determine whether such a plan will maximize efficiency when faced with one (and possibly two) outgoing justices during the last few months of their terms. While there may be circumstances in which a court's suspension of its internal rules constitutes a clear abuse of discretion, it does not appear, under the circumstances presented here, that the Thirteenth Court clearly abused its discretion or refused to perform a non-discretionary duty. *See In re Yates*, 960 S.W.2d 652, 652 (Tex.1997); *O'Connor*, 837 S.W.2d at 97. The constellation of constitutional, statutory, and administrative provisions on which Justice Castillo relies does not create a right to participate in the majority-opinion draw and cannot support her claim for extraordinary relief.

It is not uncommon for justices on a collegial court to harbor differences of opinion on administrative or substantive matters. Proceedings like these are rare but may occasionally be necessary to ensure that a justice is able to perform the duties appertaining to the office. *See O'Connor*, 837 S.W.2d at 97. We express no opinion on the validity of Justice Castillo's challenge to the original plan, which presented separate issues about the role of a justice on an appellate court. In this case, however, the court withdrew its previous plan, and we find the substitute to be within the court's discretion. The petition for writs of mandamus and prohibition and the supplemental petition for writ of prohibition are denied. TEX.R.APP. P. 52.8(a).

---

**5.** By contrast, other portions of Rule 6 specify "all justices." See 13th Court Administrative Rule 6 (*"All Justices, without exception,* shall ... randomly draw for panel membership.") (emphasis added)