PER CURIAM
The ultimate issue in this governmental-immunity case is whether Shamrock Psychiatric Clinic, P.A., a Medicaid provider, is entitled to a contested-case hearing on the merits of the State's claim to recoup alleged overpayments. We hold that it is.
The Texas Health and Human Services Commission administers the Texas Medicaid Program. See TEX. GOV'T CODE § 531.021(a).[1] Through its Office of Inspector General, the Commission is responsible for investigating violations of and enforcing state laws related to the Medicaid program. Id. § 531.102(a). The statute authorizes the Inspector General to impose, without prior notice, a "payment hold" on Medicaid reimbursements to a provider upon a credible allegation of provider fraud. Id. § 531.102(g)(2). A Medicaid provider subject to a payment hold may request an "expedited administrative hearing" before the State Office of Administrative Hearings (SOAH) within thirty days. Id. § 531.102(g)(3).
Texas law also directs the Inspector General to recover from a Medicaid provider any "overpayment" identified in a fraud or abuse investigation. Id. § 531.120. Similar to the payment-hold statute, the recoupment-of-overpayment provision establishes a detailed notice scheme:
A provider must request an appeal under this section not later than the 15th day after the date the provider is notified that the commission or the commission's office of inspector general *556 will seek to recover an overpayment or debt from the provider. On receipt of a timely written request by a provider who is the subject of a recoupment of overpayment or recoupment of debt arising out of a fraud or abuse investigation, the office of inspector general shall file a docketing request with the State Office of Administrative Hearings or the Health and Human Services Commission appeals division, as requested by the provider, for an administrative hearing regarding the proposed recoupment amount and any associated damages or penalties. The office shall file the docketing request under this section not later than the 60th day after the date of the provider's request for an administrative hearing or not later than the 60th day after the completion of the informal resolution process, if applicable.
Id. § 531.1201(a). In addition, the Commission's administrative rules set forth the required content of both the Inspector General's notice that it will seek to recoup an overpayment and the provider's request for a hearing. See 1 TEX. ADMIN. CODE §§ 371.1615, .1711.[2] A provider must request an appeal within fifteen days. Id. § 371.1711(d)(3). If it does not, upon expiration of thirty calendar days after the receipt of the final notice, the sanctions the Inspector General seeks become "a final debt in favor of the State of Texas" that the State may recoup. Id. § 371.1617(a)(1), (b).
Shamrock is a Medicaid provider in Houston. In January 2013, Shamrock received a "Notice of Payment Hold" from the Inspector General. Shamrock timely responded to the notice, requesting an expedited administrative hearing. The Inspector General docketed the payment-hold contested case at SOAH in February 2013, with the hearing scheduled to commence in November. Beginning in September 2013, the Inspector General attorney assigned to Shamrock's case began corresponding with Shamrock's counsel and proposed to "consolidate" the pending payment-hold case with the soon-to-be-filed overpayment-recoupment case. The relevant correspondence is as follows:
An email dated September 17, from the Inspector General's attorney : "We have the payment hold case coming up pretty fast and I wanted to check in with you. Here is what I propose. We send you the final notice of overpayment and we set the overpayment case at SOAH, which won't have a hearing date until Spring 2014, then we now can consolidate both cases. ..."
An email dated October 2, from the Inspector General's attorney: "I wanted to reach out and see if you were able to determine whether your client would prefer to go directly to the overpayment hearing. I also wanted to let you know that I am leaving OIG on October 11, 2013...."
An email dated October 4, from Shamrock's attorney: "I have discussed your proposal with my client and he has agreed. Let's go ahead with the notice of overpayment, set it at SOAH, and consolidate both cases. Let me know when you receive this email and if I need to do anything."
An email dated October 7, from the Inspector General's attorney: "I will check with SOAH to see whether they want us to docket a separate case then consolidate or just file the overpayment case in the same case number as the payment hold (my preference). I believe *557 we could be ready for a hearing on the overpayment case in about 90 days. Do you have an idea of when you and your client would want to have that hearing? We have several open dates in January, 2014."
An email dated October 7, from Shamrock's attorney: "[W]e may need more than 90 days for the hearing.... Let me know if there is anything I can do to assist you in docketing/consolidating the cases."
On October 9, the Inspector General's attorney filed a status report in the payment-hold case then pending at SOAH, stating:
In addition to the payment hold, [the Inspector General] is seeking recoupment of payments, which [the Inspector General] alleges [Shamrock] was not entitled to receive.... Counsels for [the Inspector General and Shamrock] have agreed to consolidate both the payment hold and the overpayment into one proceeding in the interest of judicial economy.... Shamrock has opted to proceed to the overpayment hearing there at SOAH. At this point, without the court's objection, [the Inspector General] would like to simply file an amended pleading reflecting the consolidated issues.
Relying on the Inspector General's status report, the administrative law judge issued an order stating: "the parties requested a prehearing conference to consider how to proceed with discovery pertaining [to] the overpayment issues in light of the fact that the parties have agreed to consolidate the payment hold and overpayment issues into one proceeding." The judge then continued the November 2013 hearing to March 3, 2014, relying on the parties' agreement to consolidate the payment-hold and overpayment hearings as stated in the Inspector General's status report and reaffirmed during the prehearing conference. On October 11, the attorney handling Shamrock's case for the Inspector General left the agency.
On December 2, Shamrock received the Inspector General's "Final Notice of Overpayment," which included notice of the fifteen-day appeal requirement. See 1 TEX. ADMIN CODE § 371.1711(d)(3). Under the agency's administrative regulations, Shamrock was required to file a written appeal by December 17, 2013. See id. § 371.1615(b). Shamrock did not file a written appeal by that deadline. On January 2, 2014, the Inspector General's new counsel notified Shamrock of the State's intent to dismiss the overpayment and payment-hold cases due to Shamrock's failure to submit a written request for an appeal. "Panicked," Shamrock's counsel replied with a letter referring to the history of the parties' discussions and agreement to consolidate the cases, and "reurge [d]" Shamrock's appeal of the overpayment claim. Disregarding the letter, the Inspector General filed a motion to dismiss the pending SOAH case, asserting that the $1.6 million-dollar sanction became final because of Shamrock's failure to timely submit a written appeal request. See id. § 371.1617.
The administrative law judge initially denied the Inspector General's dismissal request, finding that the parties entered into an "agreement that the payment hold and final notice of overpayment cases would be heard together in the spring of 2014," and thus the Inspector General "had adequate notice that [Shamrock] intended to appeal both the payment hold case and the final notice of overpayment case." The judge reminded the parties that a hearing had already been calendared and concluded, "For [Shamrock] to have requested a hearing when one was already set would have accomplished nothing because the parties had already agreed to *558 consolidate the two cases for hearing." One month before the hearing, however, the Inspector General "withdrew" its payment-hold contested case and then argued that even if there was an underlying agreement to consolidate the cases, the administrative law judge no longer had jurisdiction to enforce the agreement because no contested case was pending on either issue. On March 3, the judge reversed her previous ruling:
Based on the facts listed in the chronology, [SOAH] recognizes that [the Inspector General] asked Shamrock to consolidate the payment hold and recoupment issues, represented to SOAH that the parties had agreed to consolidate both issues into one proceeding in the interest of judicial economy, represented that it preferred to amend its payment hold pleading without getting another docket number, and asked for a continuance so that both issues could be heard together. Some months later, [the Inspector General] sent formal notice of the recoupment to Shamrock. Shamrock did not file an appeal because it had relied on [the Inspector General's] commitment to amend its pleadings and [SOAH] had already set the hearing on both issues.
However, even though Shamrock relied on [the Inspector General's] representations to its detriment, [SOAH] cannot proceed to a hearing. [The Inspector General] has withdrawn the payment hold issue, and it has neither separately filed an overpayment claim to SOAH regarding Shamrock nor amended its pleadings to assert an overpayment claim. [SOAH] does not have authority to require [the Inspector General] to amend its pleading to assert an overpayment claim in this case.
The judge concluded that she had "no petition or complaint on which to conduct a contested case hearing" and dismissed the case from SOAH's docket. Shamrock filed a motion to reconsider, which was denied. The State has since placed a warrant hold on Shamrock through the State Comptroller to recover the final debt, calculated to be $1,611,709.
Shamrock filed suit in district court seeking (1) a declaratory judgment that the Inspector General's refusal to proceed with the contested-case hearings violated its statutory and constitutional due-process rights; (2) a writ of mandamus directing the administrative law judge to enforce the alleged Rule 11 agreement between the parties; and (3) injunctive relief preventing the Health and Human Services Commission or its Inspector General "from keeping money withheld as part of a temporary payment hold." Shamrock alleged that the Inspector General violated Shamrock's constitutional rights in denying it procedural due process and taking its property-money paid to Shamrock for providing services to Medicaid beneficiaries-in violation of the Texas Constitution. Shamrock argued four theories in support of its claims: (1) Shamrock timely requested a hearing after being notified of the Inspector General's intent to make the temporary payment hold permanent; (2) the Inspector General's status report constituted a SOAH pleading; (3) the parties' agreement was binding and enforceable, and (4) the Inspector General could not simply "withdraw" or non-suit its payment hold once a hearing had been requested without returning the money withheld on the payment hold to Shamrock. The Inspector General filed a general denial and a plea to the jurisdiction based on sovereign immunity. After a hearing, the trial court granted the Inspector General's plea.
On appeal, Shamrock argued that the trial court erred by granting the plea to the jurisdiction and dismissing its request for a writ of mandamus. Shamrock argued *559 that both the administrative law judge and the Inspector General had a ministerial duty to enforce or abide by the Rule 11 agreement created by the parties' communications and the Inspector General's written representations.[3] The court of appeals rejected this argument, holding that "Shamrock has not established that the [Commission or its Inspector General] had a ministerial duty to docket the overpayment case at SOAH, nor has it demonstrated the failure of a state official to perform any other ministerial duty. Shamrock's petition for a writ of mandamus was therefore barred by sovereign immunity ...." 2016 WL 4269977, at *8 (Tex. App.-Austin, August 10, 2016). Shamrock now seeks relief in this Court.
Shamrock advances three arguments in support of its petition. First, Shamrock argues that the administrative law judge abused her discretion in dismissing the case because the Inspector General's status report and other written representations to the court constituted a "pleading" or an amendment to its pleadings sufficient to establish jurisdiction at SOAH. Second, Shamrock argues that the Inspector General waived its notice-and-appeal requirements through its email correspondence and recorded representations to the administrative law judge. Finally, Shamrock argues that even if there was no waiver, the Inspector General's written and recorded representations to Shamrock and the administrative law judge constituted a binding Rule 11 agreement between the parties, and thus the judge abused her discretion in refusing to enforce it. The Inspector General argues that Shamrock's shifting theories of liability on appeal make it difficult to discern the appropriate relief, if any, it may be entitled to in this case, and we agree. But we disagree with the Inspector General and the court of appeals that Shamrock failed to demonstrate the failure of a state official to perform a ministerial duty.
Sovereign immunity from suit deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the State consents to suit, Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 224 (Tex. 2004) ; City of Dallas v. Albert , 354 S.W.3d 368, 373 (Tex. 2011), or has otherwise acted outside its "sphere of immunity," Reata Constr. Corp. v. City of Dallas , 197 S.W.3d 371, 377 (Tex. 2006). Thus, the trial court properly granted the Inspector General's plea to the jurisdiction if the Inspector General "asserts and supports with evidence that the trial court lacks subject matter jurisdiction." Miranda , 133 S.W.3d at 228. We review the Inspector General's challenge to the trial court's subject-matter jurisdiction de novo, indulging every reasonable inference and resolving any doubts in Shamrock's favor. Id.
As a preliminary matter, the Inspector General argues that we do not have jurisdiction over Shamrock's petition for review because (1) Shamrock's petition is too fact intensive to be important to the jurisprudence of this State; and (2) Shamrock's request for mandamus relief is improper. We reject these contentions. First, it's true that Shamrock has much at stake *560 in the favorable resolution of this case-as it currently stands, the State has established a right to recoup, without any adversarial process, $1.6 million in Medicaid payments. Shamrock, however, alleges that the State regularly engages in this kind of "bait and switch" with the entities it regulates.[4] In addition, this Court has a constitutional obligation to supervise and administer the judicial branch and is responsible for the orderly and efficient administration of justice. TEX. CONST. art. V, §§ 3, 31 ; TEX. GOV'T CODE § 74.021 ; In re Castillo , 201 S.W.3d 682, 684 (Tex. 2006). In this role, we may issue writs of mandamus or grant other relief as necessary to compel officials to perform non-discretionary acts when the law so requires. TEX. GOV'T CODE § 22.002 ; Castillo , 201 S.W.3d at 684.
Under Texas law, "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." City of El Paso v. Heinrich , 284 S.W.3d 366, 372 (2009). "To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." Id. A trial court has a ministerial duty to enforce a valid Rule 11 agreement. Fortis Benefits v. Cantu , 234 S.W.3d 642, 651 (Tex. 2007) ; EZ Pawn Corp. v. Mancias , 934 S.W.2d 87, 91 (Tex. 1996).
Shamrock argues that the State's written communications and representations to both Shamrock and the administrative law judge constitute a valid and enforceable agreement under the SOAH's rules of procedure. The rules state that "no agreement between attorneys or parties regarding a contested case pending before SOAH will be enforced unless it is in writing, signed, and filed with SOAH or entered on the record at the hearing or prehearing conference." 1 TEX. ADMIN. CODE § 155.415. Because Rule 155.415 mirrors the language of Texas Rule of Civil Procedure 11, Shamrock argues that cases applying Rule 11 should guide our interpretation of the administrative analogue. See TEX. R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."). Because the rules are nearly identical in language, and because the statute expressly authorizes administrative law judges to refer and abide by the Texas Rules of Civil Procedure, we agree that cases discussing Rule 11 agreements may guide our interpretation of SOAH Rule 155.415. See 1 TEX. ADMIN. CODE §§ 155.3(g) (stating that the presiding judge may consider the Texas Rules of Civil Procedure "as interpreted and construed by Texas case law" in applying SOAH rules of procedure), .251(c) ("Parties have the discovery rights provided in this section, the [Administrative Procedure Act], and the [Texas Rules of Civil Procedure]....").
Litigants' Rule 11 agreements are contracts relating to litigation, and thus we construe them under the same rules as a contract. Trudy's Tex. Star, Inc. v. City of Austin , 307 S.W.3d 894, 914 (Tex. App.-Austin 2010, no pet.). We do not give a Rule 11 agreement greater effect *561 than the parties intended. Austin v. Austin , 603 S.W.2d 204, 207 (Tex. 1980). If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous and we construe it as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).
To be effective, a Rule 11 agreement must consist of "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement." Padilla v. LaFrance , 907 S.W.2d 454, 460 (Tex. 1995) (quoting Cohen v. McCutchin , 565 S.W.2d 230, 232 (Tex. 1978) ). We have held that a series of letters between the parties is sufficient to constitute a Rule 11 agreement. Id. at 455. Other courts have held that a "series of e-mails" established an agreement between the parties. See, e.g. , Green v. Midland Mortg. Co. , 342 S.W.3d 686, 692 (Tex. App.-Houston [14th Dist.] 2011, no pet.). Here, the alleged agreement, made via email and memorialized in the Inspector General's status report, was in writing, signed, and filed with the court, as required by Rule 11 and Rule 155.415. Thus, the dispositive issue is whether the status report contained all of the essential elements of the parties' agreement. Padilla , 907 S.W.2d at 460.
The Inspector General's status report expressly states, "Counsels for Respondent and Petitioner have agreed to consolidate both the payment hold and the overpayment into one proceeding in the interest of judicial economy." The administrative law judge relied on this representation in setting a prehearing conference "to consider how to proceed with discovery pertaining to the overpayment issues in light of the fact that the parties have agreed to consolidate the payment hold and overpayment issues into one proceeding. " The administrative law judge further relied on the Inspector General's representations in memorializing the parties' agreement to postpone the hearing that was set for November 2013.
The Inspector General argues that the "only agreement reflected in the parties' email correspondence is that the payment-hold and overpayment issues should be consolidated for efficiency at some unspecified point." We find this argument unpersuasive. There is no question the parties agreed that Shamrock would have an opportunity to defend itself against the Inspector General's overpayment claims in a contested-case hearing, not at "some unspecified point," but on a specific date-March 3, 2014, the date set by the administrative law judge for the hearing. As the status report and the administrative law judge's orders reflect, the parties already received and relied on instructions pertaining to discovery relating to the Inspector General's overpayment claims, and the Inspector General acknowledged that Shamrock had "opted to proceed with the overpayment hearing" at SOAH. There remained no further ambiguities or issues relating to the agreed-upon hearing; thus, we find that the Inspector General's status report, in conjunction with the administrative law judge's orders relying on that report, constitute a "written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement." Padilla , 907 S.W.2d at 460 (quoting Cohen , 565 S.W.2d at 232 ).
The power to conduct adjudicative proceedings necessarily includes
(1) the power to accept and act upon an agreement between the parties that removes from dispute and litigation a subsidiary issue of fact or law; (2) the power to interpret the agreement when a dispute arises subsequently in that regard; and (3) the power to formulate and award a reasonable remedy necessary to effectuate the agreement.
*562 Cities of Abilene v. Pub. Util. Comm'n of Tex. , 146 S.W.3d 742, 747 (Tex. App.-Austin 2004, no pet.) (citing Pub. Util. Comm'n. of Tex. v. Sw. Bell Tel. Co. , 960 S.W.2d 116, 119-20 (Tex. App.-Austin 1997, no pet.) ). Wielding this power is not only a judge's right, but a judge's responsibility. Cantu , 234 S.W.3d at 651 ("A trial court has a ministerial duty to enforce a valid Rule 11 agreement."). Here, the administrative law judge initially acted in accordance with this responsibility when she denied the Inspector General's motion to dismiss the case. We agree that the parties "had already agreed to consolidate" the payment-hold and overpayment cases for hearing on March 3, 2014, and find that the denial of the Inspector General's motion to dismiss was a proper exercise of the administrative law judge's obligation to enforce the parties' agreement. We disagree that the Inspector General could unilaterally deprive the judge of jurisdiction by simply "withdrawing" its payment-hold case. Rather, the judge had the authority to require the Inspector General to proceed with its contested case as it had agreed to do.
Because the administrative law judge failed to perform a purely ministerial act, the ultra vires exception to sovereign immunity applied to Shamrock's suit. Accordingly, the trial court erred in granting the Inspector General's plea to the jurisdiction on sovereign-immunity grounds. Without hearing oral argument, see TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.
Justice Blacklock did not participate in the decision.

The relevant provisions of Government Code chapter 531 were amended in 2015. See Act of May 30, 2015, 84th Leg., R.S., ch. 945, 2015 Tex. Gen. Laws 3304, 3304-16. All citations in this opinion are to the version of the statute in effect at the relevant time period.

The administrative rules for this procedure have since been amended. Citations of the rules in this opinion are to the version in effect at the relevant time period.

The Inspector General argues that Shamrock's petition should be dismissed because the relief that Shamrock seeks on appeal differs from the relief it sought below. We reject this contention. In the trial court, Shamrock sought, among other things, a writ of mandamus requiring the administrative law judge to enforce the parties' agreement. Shamrock asserted a nearly identical argument in the court of appeals. The court of appeals failed to address whether the administrative law judge had a ministerial duty to enforce the parties' agreement.

See, e.g. , Simmons v. Smith , No. 12-16-00108-CV, 2016 WL 6426843, at *1 (Tex. App.-Austin, Oct. 31, 2016, pet. denied) (mem. op.) (noting that after Inspector General set a payment-hold case for hearing, it issued a Final Notice of Overpayment and then moved to dismiss the payment-hold case).