**CONCUR and Opinion Filed August 20, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00274-CV

**STEWARD HEALTH CARE SYSTEM LLC AND SOUTHWEST GENERAL HOSPITAL, LP, Appellants**
**V.**
**FRANK SAIDARA, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16862**

## CONCURRING OPINION
Before the Court sitting En Banc
Opinion by Chief Justice Burns

Ordinarily, this Court does not publish or discuss our internal administrative rules (operating rules), internal discussions, deliberations, tentative votes, positions taken and changes, or preliminary writings in an opinion. This is because courts in this state are created for the *sole purpose* of the judicial determination of presently existing disputes *between the parties* in which an effective judgment can be rendered. *See City of W. Univ. Place v. Martin*, 123 S.W.2d 638, 639 (Tex. 1939). If a justice is not careful, publishing and discussing internal disputes regarding policy and administrative procedures can put the justice in the position of violating

the Texas Constitution's and the Texas Code of Judicial Conduct's prohibitions against conduct that casts public discredit on the judiciary. S*ee* TEX. CONST. art. V, § 1-a(6)(A); TEX. CODE JUD. CONDUCT, Canon 2(A), reprinted in TEX. GOV'T. CODE ANN., tit. 2, subtit. G, app. B. However, because Justice David Schenck has chosen to insert his disagreement with the Court's internal administrative procedures into this judicial opinion regarding a dispute between the parties, I feel compelled to respond.

## Appropriate Action

Justice Schenck concludes that, in light of his concerns with the way in which this case was considered by the Court, he is constitutionally and ethically obligated to take "appropriate action," and that action is to write a concurrence explaining his disagreement with the other members of the Court regarding its internal administrative procedures and interpretation of the Texas Rules of Appellate Procedure. In my view, if a member of the Court has a legitimate, good-faith belief that due process has been violated and that the violation arises from the operating rules of the Court, the justice should first raise the issue within the Court because the operating rules may be changed by vote of the majority of the Court's justices. If, as here, the dispute has not been resolved to the justice's satisfaction internally, a justice might file a writ of mandamus in the Texas Supreme Court. *See, e.g.*, *In re Castillo*, 201 S.W.3d 682 (Tex. 2006) (justice filed petitions for writ of mandamus and writ of prohibition to order Thirteenth Court of Appeals to vacate an "exit plan"

–2–

devised by other justices of court after justice lost her reelection bid.); *In re Yates*, 960 S.W.2d 652 (Tex. 1997) (five justices of the nine-member Fourteenth Court of Appeals petitioned for a writ of mandamus to direct the chief justice to submit for en banc vote all requests from justice seeking en banc consideration of case.); *O'Connor v. First Court of Appeals*, 837 S.W.2d 94 (Tex. 1992) (justice of the First Court of Appeals sought writ of mandamus directing court to instruct clerk to file dissent from denial of internal request to hear appeal en banc.).  The justice might also file a complaint with the State Commission on Judicial Conduct.  *See* TEX. CODE JUD. CONDUCT, Canon 3(D).  ("A judge who receives information clearly establishing that another judge has committed a violation of this Code should take appropriate action.  A judge having knowledge that another judge has committed a violation of this Code that raises a substantial question as to the other judge's fitness for office shall inform the State Commission on Judicial Conduct or take other appropriate action.").

In my view, because Justice Schenck suggests misconduct and bias on the part of the other twelve justices on this Court, the proper course of action for him to take would be to file a complaint with the judicial conduct commission.[1]  As detailed below, such a course of action would allow (1) his allegations to be fully

---

[1] If Justice Schenck had expressed disagreement only with the legality of the Court's administrative rules, the better approach might have been for him to file a petition for writ of mandamus in the supreme court in January when the remainder of the Court did not agree with his legal interpretation of the rules of appellate procedure.   In neither event do I believe that the appropriate course of action was to insert his disagreement into this case.

–3–

investigated, (2) all parties involved in the internal dispute to have an opportunity to fully respond to the factual allegations, and (3) the merit of his allegations to be determined by a neutral body set up for that purpose.

The Texas Constitution provides for a State Commission on Judicial Conduct that consists of thirteen members, including various justices, judges, lawyers, and citizens. TEX. CONST. art. V, §1-a(6)(A). The constitution further provides that any justice may be disciplined for:

> willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of [the justice's] duties or casts public discredit on the judiciary or on the administration of justice.

*Id*. Finally, the constitution provides that after receipt of a written complaint and an investigation the Commission may, among other things, issue a private or public admonition, warning, reprimand, or requirement that the justice obtain additional training or education. *Id*.

The function of the Commission "is to maintain the honor and dignity of the judiciary and to uphold the administration of justice for the benefit of the citizens of Texas." *In re Slaughter*, 480 S.W.3d 842, 845 (Tex. Spec. Ct. Rev. 2015). When an allegation of misconduct is made, the Commission investigates and, if determined to be necessary, conducts proceedings which allow for the accused party or parties to respond and be heard. *See* TEX. GOV'T CODE ANN. § 33.022. If the complaint is

–4–

determined to be valid and of sufficient magnitude, it may be disclosed to the public as part of that process. *See id.* Of course, if the complaint is determined to be without merit or not of sufficient magnitude to warrant public disclosure, it might be dismissed, or a private admonition, warning, or reprimand might be made without the proceeding being made public, thus preserving the integrity of the judiciary as required by the constitution and code of judicial conduct. *See id.*

Because, to my knowledge, Justice Schenck has chosen not to follow that process but has himself determined the validity and magnitude of his concern merits public insertion into this dispute between the parties, I feel I must discuss and defend our administrative rules in this opinion. In doing so, I will not discuss in any detail the internal discussions, deliberations, tentative votes, or proposed opinions, although the completeness and validity of the facts as stated in his concurrence may well be questioned by other members of the Court. Arguing with Justice Schenck over his perception of the facts related to our consideration of this case or his past complaints regarding administration of the Court only prolongs resolution of this appeal while adding nothing to the judicial reasoning of the merits of this case.

### Appellate and Administrative Rules

The linchpin of Parts II, III, and IV of Justice Schenck's concurrence is his belief that, after a case is submitted to a three-justice panel for consideration, the case is "decided" once two or more justices have agreed on the judgment, and the Court is obligated to issue that panel opinion regardless of the concerns of any other

justice who was not sitting on the panel. He believes the only proper course of action to express any concerns with the three-justice panel opinion is via a post-opinion request for en banc *reconsideration*. In other words, he believes that the remaining justices are without a voice once a case is submitted to a panel, and allowing the full Court a voice in the decision, once a panel opinion circulates, amounts to a collusive effort to "conceal" the proposed panel opinion from the parties. I simply cannot agree with this interpretation of our rules. A case is not "decided" by an appellate court until the court issues its opinion and judgment, and the rules of appellate procedure clearly contemplate that a case submitted to a panel for consideration may later be considered—not only reconsidered—by the court sitting en banc.

A "decision" of the court is its determination after consideration of the facts and law; especially, a ruling, order, or judgment *pronounced* by a court when considering or disposing of a case. *Decision*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). An opinion is the court's written statement explaining its decision in a given case. *Opinion, id*. In practice, the two terms are often used interchangeably. *See e.g.*, *Citizens Nat'l Bank in Waxahachie v. Scott*, 195 S.W.3d 94, 96 (Tex. 2006) (per curiam).

In Texas, a court of appeals considers the case, either with a three-justice panel or en banc if the court votes to do so, and ultimately decides that case by issuing its judgment and accompanying opinion explaining its decision. The court of appeals is required to "hand down" a written opinion that is as brief as practicable but that

addresses every issue raised and necessary to final disposition of the appeal. TEX. R. APP. P. 47.1.[2]  Such opinions are "issued" by the court.  *See id.* 47.2 ("Opinions and memorandum opinions in civil cases *issued* on or after January 3, 2003 shall not be designated 'do not publish.'").  The Clerk of the Court notifies the parties of the court's decision by sending a copy of the judgment and the accompanying opinion to the parties.  *See id*. 12.6.

The Fifth Court of Appeals is a thirteen-justice court.  TEX. GOV'T CODE ANN.§ 22.216(e). When a court has more than three justices, the rules of appellate procedure provide for both panel and en banc decisions of the courts of appeals. Rule 41.1 governs panel decisions and provides "*[u]nless a court of appeals with more than three justices votes to decide a case en banc*, a case must be assigned to a panel of the court consisting of three justices."  TEX. R. APP. P. 41.1(a) (emphasis added).  Rule 41.2 governs decisions by the en banc court. *Id*. 41.2. Rule 41.2(c) provides that, although a vote to determine whether a case will be heard or reheard en banc need not be taken on every case, if a member of the court requests such a vote and a majority of the court's members vote to hear or rehear the case en banc, the en banc court will hear or rehear the case.  *Id*. Similarly, the rules of appellate procedure provide for reconsideration of a case by either the panel who originally

---

[2] An exception to this rule is cases involving appeals from the trial court's denial of an application for an order authorizing a minor to consent to an abortion without parental notification.  In such cases, a court of appeals may issue an opinion explaining its ruling but is not required to do so.  *See* TEX. R. JUD. BYPASS PAREN. NOT. & CONS. CHAP. 33 FAM. CODE JUDICIAL BYPASS 3.3(e)(1).

decided the case or by the en banc court. *See id.* 49.3 (decisions on motion for rehearing); 49.7 (governing en banc reconsideration).

The rules of appellate procedure do not, however, provide how or when the court of appeals may vote to *consider* a particular case en banc. But when such a determination is made, the en banc court consists of all members of the court who are not disqualified or recused and—if the case was originally argued before or decided by a panel—any members of the panel who are not members of the court, but remain eligible for assignment to the court. *Id.* 41.2(a).

The rules of appellate procedure also provide that, if for any reason a member of a panel cannot participate in deciding a case, the case may be decided by the two remaining justices. *Id.* 41.1(b). If the remaining justices cannot agree on the judgment, the chief justice of the court of appeals *must*: (1) designate another justice of the court to sit on the panel to consider the case; (2) request the chief justice of the supreme court to temporarily assign an eligible justice or judge to sit on the panel to consider the case; or (3) convene the court en banc to consider the case. *Id.* 41.1(b) (emphasis added).

This Court, like other appellate courts in this State, has adopted local rules to supplement the rules of appellate procedure. *See id.* 1.2(a). Local rules must be approved by either the Texas Supreme Court or the Texas Court of Criminal Appeals. *Id.* And a court of appeals must provide a copy of the court's local rules

to anyone who requests it. *Id*. 1.2 (b). This Court has not adopted any local rules relevant to any issue in this case.

Separate and apart from the local appellate procedural rules, appellate courts in Texas also adopt internal rules or procedures governing the administration of the Court. *See generally, Castillo*, 201 S.W.3d at 683–84 (discussing court of appeals internal administration rules with respect to an "exit plan" for a justice once she lost the primary election). These rules are not required to be approved by the supreme court. *See id*. at 685 (noting that such rules may be modified or suspended by a majority vote of the justices of the court and leaving such rules to the discretion of the court). As noted in *Castillo*, both state and federal courts engage in a variety of practices for assigning cases and managing their docket. *Id*. Some assign cases randomly, others by seniority, still others by assignment by the chief justice. *Id*. Information regarding the various internal administrative rules of appellate courts in Texas is available to the public on the various court websites. This Court has published some information about, but not the entirety of, our administrative operating rules. *See* https://www.txcourts.gov/media/1443148/5th-court-of-appeals-iop.pdf.

As part of our current administrative rules, last amended in 2014, this Court has adopted practices for, among other things, (1) the circulation of proposed panel opinions, (2) full court review and comment on proposed panel opinions, and (3) requests for en banc consideration of a case. The rules are subject to amendment at

any administrative conference with the concurrence of at least seven members of the Court, provided that the substance of the amendment has been circulated to all members of the Court at least one working day before the conference.[3]

When, as here, we have determined a case should be submitted to a panel with oral argument, the case is assigned to a member of the panel after oral argument. That justice then prepares an opinion in light of the views expressed in the post-argument conference but is not bound by such views. Once the proposed opinion is ready and in proper form for issuance, it is circulated to the remaining panel members for their review. If a member of the panel does not agree with the circulating proposed opinion, the justice is required to indicate, within eight days of circulation, an intention to concur or dissent or request a two-week extension of time to study the case. If the justice decides to write separately, the justice has thirty days from the date of the circulation of the proposed opinion to complete the concurring or dissenting opinion. If more than one member of the panel disagrees with the proposed majority opinion as circulated, the case is assigned by the panel to a different justice to write for the majority. The new proposed majority opinion is then circulated to the panel. The author of the original proposed opinion may then complete and circulate to the panel a dissenting or concurring opinion.

---

[3] I have limited my discussion of the Court's administrative rules to those relevant to this case. I note that Justice Schenck's disagreement with other aspects of the administrative rules has not been, and is not currently, the view of the majority of the justices of the Court despite what he characterizes as his "many" and "loud" attempts to convince them otherwise. *See* Schenck, J., concurring at slip. op. 61.

Once the proposed panel opinion and any separate opinions have been approved by the panel members, those proposed panel opinions are then circulated to the full court for review and comment at the request of any panel member. As a matter of practice, because this Court operates with four panels, opinions with separate opinions are circulated to all the other justices so that they can be apprised of any disagreement among the panel members. A civil opinion may issue eight calendar days after the proposed panel opinion is circulated to the full court. But, at any time prior to issuance, a justice may deliver to the chief justice and the author of the majority opinion a written request for an en banc conference, accompanied by a memorandum stating grounds for disagreement and citing supporting authorities, if any, or referring to a dissenting or concurring opinion for grounds of disagreement. If at least six other justices join the request, the chief justice shall call for an en banc conference.

In common practice, during the eight-day circulation of a proposed panel opinion to the full court, a justice may request a two-week study of the case.[4] Cases that present difficult questions are, of course, more likely to result in the request for a two-week study. And, as a common practice, the two-week study period is often

---

[4] With respect to criminal opinions, the Court's operating rules specifically provide that after an opinion designated for publication has been approved by the sitting panel, it is circulated to all other justices. Opinions may be issued on the expiration of eight calendar days after circulation if all justices have indicated by vote that they have reviewed the opinion and have not requested a two-week extension of time to study the case. Further, cases may be and are often held as a courtesy and at the discretion of the authoring justices for longer than two weeks to allow for study of the case. It is also not uncommon for the author of a majority to hold an opinion longer than the time allotted for a proposed dissenting opinion to be completed.

extended at an authoring justice's discretion to allow a justice more time to consider the proposed opinion. During that time, a "studying" justice may determine that en banc consideration is appropriate and prepare a memorandum requesting such consideration or he or she may determine that no such request is appropriate and remove the request. Further, and of particular relevance here, our administrative rules provide that, upon resignation, retirement, or expiration of the term of any member of the Court, the successor takes the predecessor justice's place on the panel, including authorship if relevant, and in the rotation schedule.

Here, after the panel refused to approve the original majority opinion, another panel member was assigned to author the majority. That new proposed majority, as well as the original author's dissent, was circulated to the full court for review and comment per a panel member's request.[5] Before the opinion issued and the review and comment period ended, two things happened.[6] A panel member's term of office expired, and a non-panel member requested a two-week study of the proposed majority opinion.[7] Consequently, the proposed opinions did not issue. As is the case here, the process of considering a case may result in various proposed opinions

---

[5] In practice, the panel can agree to expedite full court review. That is done by notifying the non-panel members of the need and reason for a shortened review period, and asking that they review the proposed opinion or opinions by a certain date. The author may issue after all justices have noted on TAMES that the proposed opinion has been reviewed. In this case, the panel agreed to expedite full court review.

[6] The review and comment period runs for eight full days. After it expires (not on the last day), the opinion may issue if appropriate.

[7] A prior request for a two-week study by another non-panel member was later withdrawn.

and preliminary votes, but the case is not "decided" within the meaning of the rules of appellate procedure until the Court issues its judgment and accompanying opinion explaining how that judgment was reached. That process may include requests for study and for en banc consideration after an opinion has been submitted to a panel and circulated to the full court.

I disagree with Justice Schenck's view that, once a panel has voted on a proposed opinion and judgment, a former justice's vote is somehow final and can operate to "lock in" the disposition of the case, rendering the case "decided" prior to the Court's pronouncement of its judgment. I also disagree with Justice Schenck that, in the process of considering this case, the Court violated the rules of appellate procedure, the due process rights of the parties, or committed any other "administrative irregularities." Instead, I believe the Court followed the Court's internal practices and administrative rules, and those rules and practices are in compliance with the rules of appellate procedure.

I find support for my position in the supreme court's reasoning in *O'Connor*. 837 S.W.2d at 95. In that case, Justice O'Connor sought a writ of mandamus from the supreme court directing the First Court of Appeals to instruct its clerk to file her dissent from the denial of her motion to consider an appeal en banc. *Id*. In accordance with the First Court's customary practice, a proposed panel opinion was circulated to all members of the court for comments. *Id*. O'Connor, "exercising her

prerogative under rule 79(e) of the Texas Rules of Appellate Procedure",[8] made a written motion to submit the case for en banc hearing, but her request failed to receive a majority vote. *Id.* When O'Connor informed the court that she planned to file a dissent from the order denying en banc consideration, a majority of the full court voted to deny leave to file the dissent and ordered the clerk not to file it. *Id.* She then filed a petition for writ of mandamus in the supreme court.

The supreme court agreed with O'Connor that she was entitled to file her dissent. *Id.* at 96. In reaching that conclusion, the court reasoned that a court of appeals is an integral body, even though it may sit in panels. *Id.* And, unless a court of appeals chooses to hear a case en banc, the decision of the panel constitutes the decision of the entire court. *Id.* Because such cases are binding on the entire court, the rules provide for a justice who is not a member of the panel to request en banc consideration of a case and to file a concurring or dissenting opinion if desired. *Id.* The supreme court noted that to read the rule more restrictively would divide the court into distinct subparts, effectively disenfranchising those members of the court who were not on the original panel deciding the case. *Id.* (citing *Textile Mills Sec. Corp. v. Comm'r of Internal Revenue*, 314 U.S. 326, 333 (1941)).

---

[8] Rule 79(e) was nearly identical to current rule 41.2(c). Both the current and former rule provide that a justice of the court may request a vote for en banc consideration or reconsideration. If a vote is requested and a majority of the court agrees, the court will hear or rehear the case en banc. *See* TEX. R. APP. P. 41.2(c).

As to the "binding authority" relied on by Justice Schenck, I believe his reliance on *State v. Sink*, 685 S.W. 2d 403 (Tex. App—Dallas 1985, no writ) (per curiam), is misplaced, overstated, and in direct conflict with the reasoning in *O'Connor*. *Sink* is a per curiam case issued with Justices Akin, Stewart, and Keith listed as participating in the decision. *Id*. at 403. Two footnotes explained that (1) the "opinion was prepared and approved by Justice Stewart prior to the expiration of her term of office on December 31, 1984," and (2) the Honorable Quentin Keith, a retired justice, was sitting by assignment. Unlike the circumstances in this case, Justice Stewart retired and was eligible to sit by assignment, and the two remaining panel members agreed on the judgment. Thus, the proposed opinion prepared by Justice Stewart properly issued.[9] The *Sink* court did not explain the inclusion of Justice Stewart in the heading, and Justice Schenck's reliance on the case for the proposition that because a departing justice voted on a proposed panel opinion prior to the expiration of the justice's term, precedence required the Court to issue the proposed opinion is misplaced. *O'Connor*, an opinion by the supreme court, directly addresses the interplay between panel members and non-panel members and en banc consideration of proposed panel opinions in the court of appeals, and it supports my

---

[9] Although the opinion properly issued, the heading should not have included Justice Stewart as participating in the opinion without explanation. The footnote should have indicated either that although Justice Stewart participated in the submission and preparation of the opinion she did not participate in its issuance or that she had been appointed to continue sitting on the case. *See e.g., City of Glenn Heights v. Sheffield Dev.* Co., 55 S.W.3d 158, 160 n.1 (Tex. App—Dallas 2001, pet. denied); *Abella v. Knight Oil Tools*, 945 S.W.2d 847, 848 n.1 (Tex. App—Houston [1st Dist.] 1997, no pet.); *Grunewald v. Technibilt*, 931 S.W.2d 593, 594 n.2 (Tex. App—Dallas 1996, writ denied).

view of the rules of appellate procedure and this Court's administrative rules. The heading in *Sink*, a 36-year-old per curiam opinion from this Court, indicating a retired justice participated in an opinion, does not.[10]

Further, the rules of appellate procedure specifically provide that, if a case is submitted to a panel and one of the panel members can no longer participate in deciding the case for any reason (such as expiration of a justice's term before a proposed judgment and its accompanying opinion issue), and the remaining two justices cannot agree on a judgment, it is appropriate for the chief justice to convene the court en banc to consider the case.[11]

I acknowledge that in certain cases the process of considering the case may take longer than desired. If the delay was the result of intentional, nefarious conduct, rather than the process of considering and disagreeing about issues in the case, it might be cause for complaint.

Contrary to Justice Schenck's assertions and inferences otherwise, that is not the situation presented in this case. This case proceeded like many others over the years. Once the panel had settled onto the proposed majority and dissenting

---

[10] Further, as noted by Justice Schenck, a majority of the Houston Fourteenth Court of Appeals likewise agrees with my interpretation of the rules. *See Werner Enters. v. Blake*, 2021 WL 3164005 *1 (Tex. App—Houston [14th.Dist.] July 27, 2021, n.p.h.) (Upon its own motion, a majority of the court orders en banc consideration before proposed panel opinion issued.).

[11] This is particularly appropriate when, as here, (1) contrary to the rules of appellate procedure and our administrative rules, a panel member objects to another justice taking the place of the former justice on the panel, (2) a panel member attempts to issue a proposed panel opinion with a former justice's vote forming the majority, and (3) at least six other members of the court expressed concern with the merits of the proposed opinion.

–16–

opinions, those opinions were circulated to the full court for review and comment. That review and comment period is essential to ensuring our justices are familiar with the precedent being established by the hundreds of opinions we issue annually. This review process allows the Court as a whole to consider a minority view before the majority opinion issues and prevents non-panel members from being disenfranchised from opinions that are binding on the entire Court. That is the intent and the effect of the appellate and administrative rules that guide our Court.

In sum, there is much in Justice Schenck's lengthy opinion that deserves "unraveling," but in the interest of brevity, I have focused on what I perceive to be the most important points. This case has been handled in accordance with our rules and practices. There was nothing unconstitutional about the process, and certainly nothing nefarious or underhanded. Giving Justice Schenck the benefit of the doubt, he simply misunderstands the rules.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

190274CF.P05

J.J., Myers, Molberg, Osborne, Partida-Kipness, Reichek, Nowell, Carlyle, Goldstein, Smith, and Garcia, joining.