# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00463-CV

**Cities of Abilene, San Angelo, and Vernon, Appellants**

**v.**

**Public Utility Commission of Texas and AEP Texas North Company, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GV201061, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

Appellants Cities of Abilene, San Angelo, and Vernon ("the cities") appeal a district court judgment that affirmed a final order of the Public Utility Commission ("Commission") in favor of AEP Texas North Company ("AEP").[1] The Commission determined that a prior settlement order was ambiguous with respect to the recovery of certain costs incurred before the commencement of commercial operations at the Southwest Mesa Wind Farm and that these costs could be recovered in a fuel reconciliation proceeding. *See* Tex. Util. Code Ann. § 36.203 (West 1998). Additionally, the Commission determined that costs associated with AEP's Oklaunion plant were recoverable in

---

[1] At the time of this dispute, AEP Texas North Company was known as West Texas Utilities. We will refer to the company as "AEP."

the fuel reconciliation proceeding. The cities assert that (1) the prior settlement order foreclosed AEP's ability to recover costs incurred before the commencement of commercial operations at the Southwest Mesa Wind Farm; and (2) the Commission erred in determining that costs associated with AEP's Oklaunion plant were recoverable because the Commission applied the incorrect standard to determine the Oklaunion plant's efficiency. We will affirm the judgment of the district court.

## BACKGROUND AND PROCEDURE

The Public Utility Regulatory Act allows utilities to recover fuel costs separately from non-fuel, or base costs. *See* Tex. Util. Code Ann. § 36.203 (West 1998); *see also* Public Utility Regulatory Act, *id.* §§ 11.001-64.158 (West 1998 & Supp. 2004) ("PURA"). In a fuel reconciliation proceeding, the utility has the burden to demonstrate that "its eligible fuel expenses during the reconciliation period were reasonable and necessary expenses incurred to provide reliable electric service to retail customers." 16 Tex. Admin. Code § 25.236(d)(1)(A) (2004).

On December 28, 2000, AEP filed an application for authority to reconcile fuel costs and purchased power costs from July 1, 1997, through July 30, 2000. As part of this request, AEP sought reconciliation of its purchased power costs incurred before the commencement of commercial operations of the Southwest Mesa Wind Farm under its contract with West Texas Wind Energy Partners ("Wind Partners contract"). Additionally, AEP sought to recover costs associated with its Oklaunion coal-fired power plant ("Oklaunion costs").

The cities contested whether these costs were recoverable in the fuel reconciliation proceeding. The Commission had previously approved a settlement concerning the Wind Partners contract, including a mechanism for recovering costs associated with that contract. *See* Tex. Pub.

2

Util. Comm'n, *Petition of Central Power & Light Co., West Texas Utilities Co. [AEP], and Southwestern Electric Power Co. for Approval of Contracts and Costs Associated with Renewable Energy Resources and for Authority to Implement a Power Cost Recovery Factor Associated Therewith*, Docket No. 18845, Order (Nov. 23, 1998) (hereinafter "Settlement Order").  It is undisputed that costs incurred under the Wind Partners contract *after* commercial operations began ("post-commercial costs") were to be recovered through a purchased power conservation factor (PPCF).[2]  However, the parties dispute whether the Settlement Order contemplated costs incurred *before* commencement of commercial operations of the Southwest Mesa Wind Farm ("pre-commercial costs").[3]  The cities assert that AEP agreed to relinquish the right to recover pre-commercial costs and that these pre-commercial costs were not recoverable in the fuel reconciliation proceeding.  AEP, on the other hand, argues that the Settlement Order contemplated only post-commercial costs and was silent on pre-commercial costs; pre-commercial costs would therefore be eligible for recovery through the fuel reconciliation proceeding.

Additionally, the cities contested the standard by which the Commission measured the efficiency of the Oklaunion plant.[4]  The Commission, in its preliminary order, indicated that it would consider the standard set forth in a previous docket in order to evaluate the efficiency of the

---

[2] The parties essentially agreed in the Settlement Order that, because AEP would recover post-commercial costs through a PPCF, AEP's fuel factor would be reduced as a result of the Wind Partners contract and AEP's customers would receive a credit.  *See generally* PURA § 36.203 (West 1998).  The full details of the PPCF are not at issue in this appeal.

[3] The pre-commercial costs AEP sought to recover totaled $745,530.

[4] Only "reasonable and necessary" costs are recoverable.  *See* 16 Tex. Admin. Code § 25.236(d)(1)(A) (2004).

Oklaunion plant.  *See* Tex. Pub. Util. Comm'n, *Application of West Texas Utilities [AEP] for Reconciliation of Fuel Costs*, Docket No. 23477, Preliminary Order (July 13, 2001) (hereinafter "Docket No. 23477 Preliminary Order"); *see also* Tex. Pub. Util. Comm'n, *Application of Southwestern Electric Power Company for Reconciliation of Fuel Costs, Surcharge of Fuel Cost Under-Recoveries, and Related Relief*, Docket No. 17460, Preliminary Order (Aug. 22, 1997) (hereinafter "Docket No. 17460 Preliminary Order").  The cities assert that the Commission was required to determine the Oklaunion plant's efficiency by comparing the Oklaunion plant to other coal plants in Texas.  Conversely, AEP argued that the Commission should determine the Oklaunion plant's efficiency by comparing the Oklaunion plant to similar coal plants throughout the United States.

An administrative law judge ("ALJ") held a hearing on September 27, 2001 to review AEP's request for fuel reconciliation, as well as the cities' objections.  AEP presented evidence in support of its request to include pre-commercial costs of the Wind Partners contract in reconcilable fuel.  Additionally, AEP introduced evidence of its calculation of the efficiency of its Oklaunion plant using data from the North American Electric Reliability Council's Generation Adequacy Data System ("NERC GADS").  The calculation based on the NERC GADS data produced an efficiency factor of 77.2 percent for the Oklaunion plant, compared with an efficiency factor of 72.1 percent for other coal plants throughout the country.[5]

---

[5] According to AEP's testimony before the Commission, AEP sought to "mazimiz[e] utilization of [AEP]'s lower-cost coal generation to achieve the overall lowest reasonable fuel cost." The cities assert that Oklaunion costs should not be recoverable if AEP was not operating the Oklaunion plant efficiently.

4

The cities also introduced evidence at the hearing before the ALJ. The cities introduced testimony that pre-commercial costs associated with the Wind Partners contract should not be allowed. Further, the cities introduced testimony that the efficiency of the Oklaunion plant should be determined by comparing the Oklaunion plant to other plants in Texas. The efficiency factor for other coal plants in Texas averaged 80.8 percent, compared to Oklaunion's 77.2 percent.

On December 17, 2001, the ALJ issued a proposal for decision ("PFD"). In the PFD, the ALJ determined that AEP should not be permitted to recover the pre-commercial costs associated with the Wind Partners contract because those costs were required to be recovered through the separate PPCF.[6] However, the ALJ determined that the NERC GADS standard proposed by AEP should be used to determine the plant's efficiency. The ALJ further determined that AEP had prudently managed the Oklaunion plant and that costs associated with the plant should be approved.

The Commission adopted the ALJ's recommendation to approve the Oklaunion costs but reversed the ALJ's recommendation regarding pre-commercial costs associated with the Wind Partners contract. *See* Tex. Pub. Util. Comm'n, *Application of West Texas Utilities [AEP] for Authority to Reconcile Fuel Costs*, Docket No. 23477, Order (Feb. 14, 2002) (hereinafter "Final Order"). The Commission found that pre-commercial costs were not governed by the Settlement Order and were therefore eligible for reconciliation in Docket No. 23477.

The district court affirmed the Commission's order. This appeal followed.

---

[6] The cities had argued that pre-commercial costs were not recoverable at all, even through the PPCF.

5

## DISCUSSION

## Issue 1: Pre-Commercial Costs Associated with the Wind Partners Contract

### *Standard of Review*

PURA empowers the Commission to conduct adjudicative proceedings and to issue orders. *See* PURA §§ 14.051, .053, .057 (West 1998). The power to conduct adjudicative proceedings necessarily includes the following incidental powers: (1) the power to accept and act upon an agreement between the parties that removes from dispute and litigation a subsidiary issue of fact or law; (2) the power to interpret the agreement when a dispute arises subsequently in that regard; and (3) the power to formulate and award a reasonable remedy necessary to effectuate the agreement. *Public Util. Comm'n v. Southwestern Bell Tel. Co.*, 960 S.W.2d 116, 119-20 (Tex. App.—Austin 1997, no pet.).

Here, the Settlement Order is the Commission's approval of a non-unanimous settlement agreement regarding the Wind Partners contract. Included in the Final Order is the Commission's interpretation of the Settlement Order, issued after the parties disputed the meaning of the Settlement Order.[7]

We will review the Final Order under the substantial evidence rule. *See* PURA § 15.001 (West 1998); Tex. Gov't Code Ann. § 2001.174 (West 2000). Because the Final Order interpreted the Settlement Order, we must also review the Settlement Order. We interpret settlement agreements according to the rules applicable to contract interpretation. *See, e.g.*, *Miller v. Miller*,

---

[7] Agencies are entitled to interpret their own orders, for administrative purposes, so long as the agency does not use the occasion to interpret as a means to amend the prior order. *Railroad Comm'n v. Home Transp. Co.*, 670 S.W.2d 319, 325 (Tex. App.—Austin 1984, no writ).

721 S.W.2d 842, 844 (Tex. 1986); *Cardwell v. Sicola-Cardwell*, 978 S.W.2d 722, 725 (Tex. App.—Austin 1998, pet. denied).

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). We must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Webster*, 128 S.W.3d at 229; *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Webster*, 128 S.W.3d at 229; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962).

Deciding whether a contract is ambiguous is a question of law for the court. *Webster*, 128 S.W.3d at 229; *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A contract is unambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Under the substantial evidence standard of review, an administrative determination of a question of law, such as the meaning of an unambiguous contract, is not entitled to a presumption of validity. *See Teacher Ret. Sys. v. Cottrell*, 583 S.W.2d 928, 930 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). If the Settlement Order is unambiguous, we will not be bound by the Commission's construction of it. *See id.*; *see also National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on

7

the parties' intent. *Webster*, 128 S.W.3d at 229; *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589. If the Settlement Order is ambiguous, we will affirm the Commission's interpretation of it in the Final Order if the interpretation is supported by substantial evidence. Under the substantial evidence standard of review, we are prohibited from substituting our judgment for the agency's as to the weight of the evidence on questions committed to agency discretion. Tex. Gov't Code Ann. § 2001.174 (West 2000); *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984); *Southwestern Pub. Serv. Co./Public Util. Comm'n v. Public Util. Comm'n*, 962 S.W.2d 207, 215 (Tex. App.—Austin 1998, pet. denied). A court that is reviewing purely factual administrative findings, such as the intent of the parties where a contract is ambiguous, may determine only whether substantial evidence supports those findings. *See Charter Med.-Dallas, Inc.*, 665 S.W.2d at 452-53. The evidence may actually preponderate against the agency's finding and the court must still uphold it if enough evidence suggests the agency's determination was within the bounds of reasonableness (*i.e.*, if substantial evidence supports the agency's determination). *Southwestern Pub. Serv. Co.*, 962 S.W.2d at 215. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *Charter Med.-Dallas, Inc.*, 665 S.W.2d at 452. We turn now to our determination of whether the Settlement Order is ambiguous.

***Analysis of the Settlement Order***

The cities assert that AEP relinquished the right to recover pre-commercial costs in the Wind Partners contract, which was approved by the Commission in the Settlement Order. According to the cities, only post-commercial costs were recoverable through the PPCF, and pre-

8

commercial costs were not recoverable at all. According to the cities' argument, AEP agreed to limit cost recovery in exchange for an agreement that costs would be declared reasonable. To support this contention, the cities point out that the Wind Partners contract clearly contemplated the purchase of pre-commercial power. Because the purchase of pre-commercial power was contemplated, the failure to provide for the recovery of pre-commercial costs shows AEP's agreement to forego the recovery of pre-commercial costs.

Next, the cities cite language in the Settlement Order that "[AEP] shall begin recovering those Wind Partners contract costs that are authorized through the PPCF under the terms of this Order in the first billing cycle after commercial operation off the Wind Partners facility."[8] Settlement Order, at 6. The cities assert that because the Settlement Order referenced the time period *after* commercial operations were to begin, AEP therefore agreed to forego recovery of pre-commercial costs.

Finally, the cities allege that the Commission's interpretation of the Settlement Order disregards the effect of the Wind Partners contract, which was to have resulted in a credit for residential customers. The cities allege that allowing AEP to recover pre-commercial costs violates the agreement that residential customers would receive a credit on their bills.

AEP responds that although the Settlement Order did contemplate the purchase of pre-commercial power, this is irrelevant to the determination of whether the Settlement Order contemplated recovery of pre-commercial *costs*. AEP notes that pre-commercial costs are not

_____

[8] Similar statements, all of which reference recovery of costs *after* the commencement of commercial operations, appear throughout the Settlement Order.

9

expressly mentioned anywhere in the Settlement Order's discussion of recovery of costs through the PPCF. Therefore, AEP contends that recovery of pre-commercial costs was simply not governed by the Settlement Order and could be recovered through a fuel reconciliation proceeding.

Next, AEP argues that the fact that the Settlement Order repeatedly states that cost recovery through the PPCF shall begin *after* the commencement of commercial operations shows that the Settlement Order contemplated only post-commercial costs and was silent on the recovery of pre-commercial costs. AEP argues that it never relinquished the right to recover pre-commercial costs.

Finally, AEP challenges the cities' allegation that allowing AEP to recover pre-commercial costs violates the agreement that residential customers would receive a credit on their bills. AEP notes that the Settlement Order *did* result in a reduction of AEP's fuel factor and a corresponding credit on residential customers' bills. This credit was associated with post-commercial costs, the only costs adjudicated in the Settlement Order.

Both the ALJ and the Commission considered the arguments and testimony presented by the cities and AEP. The Commission ultimately concluded as follows:

> The Commission . . . finds that the costs incurred prior to commercial operation of Southwest Mesa are not governed by the [Settlement Order] and are reconcilable in this proceeding. The Commission finds that the order . . . was ambiguous with respect to the recovery of pre-commercial costs. While the order required [AEP] to recover costs incurred under the Southwest Mesa contract through the PPCF, the order did not contemplate that costs would be incurred prior to commercial operation. Moreover, [AEP] was not allowed to begin recovering contract costs through the PPCF until the first billing cycle after commercial operation. Considering these provisions together, the Commission finds that [AEP]'s claim that these costs are recoverable in this fuel reconciliation is reasonable.

10

Final Order, at 2. Additionally, in finding of fact 10, the Commission determined: "The [Settlement Order] does not prohibit [AEP] from recovering costs incurred before commercial operation." *Id.* at 4.

Having reviewed the entire Settlement Order, we agree with the Commission's determination that the Settlement Order was ambiguous with respect to the recovery of pre-commercial costs. The Settlement Order does not specifically address the recovery of pre-commercial costs, and we cannot determine from our review of the Settlement Order whether it contemplated the recovery of pre-commercial costs.

We also believe the Commission's determination that pre-commercial costs were recoverable in the fuel reconciliation proceeding is supported by substantial evidence. The Commission considered testimony from both the cities and AEP in order to discern the intent of the parties. In addition to weighing the arguments discussed above, the Commission heard testimony from AEP's expert that the cities' position would "exclude valid purchased power costs from reconcilable fuel expense" that would otherwise be recoverable. This expert stated that "the [pre-commercial] wind energy costs should be treated the same as other purchased power costs that are included in reconcilable fuel expense."

We find that the Commission's conclusion that the Settlement Order did not govern pre-commercial costs and that pre-commercial costs were recoverable in the fuel reconciliation proceeding is reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. We overrule the cities' first issue.

11

**Issue 2: Standard for Determining Efficiency of Oklaunion Plant**

The cities assert that the Docket No. 23477 Preliminary Order required the Commission to determine the Oklaunion plant's efficiency by comparing it only to other coal plants in Texas. The cities assert that the Commission's ultimate decision to compare the Oklaunion plant to other plants throughout the United States was arbitrary and capricious. *Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 545 (Tex. App.—Austin 2002, pet. denied) ("[W]hen an agency adopts new policy in the course of a contested-case hearing without giving the parties pre-hearing notice, the parties may be deprived of procedural due process."); *accord Langford v. Employees Ret. Sys.*, 73 S.W.3d 560, 566 (Tex. App.—Austin 2002, pet. denied).

The Docket No. 23477 Preliminary Order stated: "Finally, the Commission reiterates the standard of review for fuel reconciliation set forth in the preliminary order in Docket No. 17460." Docket No. 23477 Preliminary Order, at 3. The Docket No. 17460 Preliminary Order stated:

> As a matter of general principle, this [fuel reconciliation] review is one that must look at the "big picture" to determine how well the utility operated its system. This "big picture" examination of the utility's generation and fuel management should address:
>
> - the management of the utility's system, *e.g.*, generation mix, fuel mix, and fuel procurement processes;
>
> - the prudence of individual fuel contracts and the prudent administration and management of those contracts;
>
> - the extent to which the utility seized opportunities in the economy-energy market to minimize its costs while delivering reliable service;
>
> - how the utility's costs for fuel and purchased power compared to market rates; and

12

- the reasonableness of the utility's generation costs and power plant efficiency *compared to other plants both under that utility's control and in the State as a whole.*

Ensuring that the utility has and will continue to operate its system in a prudent manner that minimizes costs to the ratepayer, within the parameters of PURA and the Commission's rules, requires a thorough examination of the utility's overall performance that encompasses all these issues. The proper allocation of risks between shareholders and ratepayers is integral to the "big picture" review.

Docket No. 17460 Preliminary Order, at 2-3 (emphasis added and footnotes omitted). The cities assert that the Oklaunion plant was to be compared *only* to "other plants both under [AEP's] control and in the State as a whole."

AEP rejoins that the language in the Docket No. 23477 Preliminary Order referencing the Docket No. 17460 Preliminary Order merely required the Commission to *consider* other plants in Texas; it did not *limit* the Commission's comparison to plants in Texas alone. AEP supports its position by noting that the Docket No. 23477 Preliminary Order, after listing the issues to be addressed in the docket, stated: "This list of issues is not intended to be exhaustive. The parties and the ALJ are free to raise and address any issues relevant in this docket that they deem necessary, subject to any limitations imposed by the ALJ or Commission in future orders in this docket." Docket No. 23477 Preliminary Order, at 3. The Docket No. 23477 Preliminary Order concluded with a section entitled "Effect of Preliminary Order," which stated:

This Order is preliminary in nature and is entered without prejudice to any party expressing views contrary to this Order before the SOAH ALJ at hearing. The SOAH ALJ, upon his or her own motion or upon the motion of any party, may deviate from the non-dispositive rulings of this Order when circumstances dictate that it is reasonable to do so.

*Id.* at 4.

Before the ALJ, the cities and AEP each presented arguments concerning the appropriate benchmark efficiency standard to apply. The cities presented testimony that the Oklaunion plant should be compared only to other coal plants in Texas. According to the cities' testimony, the efficiency factor for other coal plants in Texas averaged 82.8 percent,[9] compared to Oklaunion's 77.2 percent.

AEP presented testimony that the Oklaunion plant was fundamentally different from other coal plants in Texas and that comparison to Texas plants alone would result in an inappropriate measure of the efficiency of the Oklaunion plant. Further, AEP's expert testified that the cities' expert compared the Oklaunion plant to its small peer group over a short period of three years. AEP's expert argued that this time period was too short for such a small peer group, and that if the period for comparison were extended from three to six years, the Oklaunion plant actually outperformed the other plants by a measure of 77.6 percent to 77.5 percent. AEP's expert testified that NERC GADS data[10] would produce a more accurate measure of the Oklaunion plant's efficiency. According to NERC GADS data, Oklaunion had an efficiency factor of 77.2 percent, compared to 72.1 percent for coal units across the United States. Finally, AEP introduced testimony

[9] AEP's expert testified that, after adjusting for errors in the cities' expert's calculation, the efficiency figure of Texas plants was actually 80.8 percent.

[10] The NERC GADS data included eighty-five coal units across the United States similar in size to the Oklaunion plant. This figure included similarly sized coal plants in Texas.

that had a fire on August 9, 1999 not occurred, the Oklaunion plant would have had a higher capacity factor.[11]

The ALJ considered this testimony and determined that the NERC GADS data was more representative of the efficiency of plants like Oklaunion. The ALJ also determined that the Oklaunion plant had been managed efficiently and Oklaunion costs should be approved. The Commission affirmed the ALJ's finding.

The Commission asserts that it did not abandon the standards it said it would apply in the Docket No. 23477 Preliminary Order. Rather, the Commission insists it complied with the directive to consider the standard set forth in the Docket No. 17460 Preliminary Order. We agree. AEP's expert testified that nothing in the Docket No. 17460 Preliminary Order prevented the use of NERC GADS data. Moreover, because the NERC GADS data included data on Texas plants, use of this data complied with the Docket No. 17460 Preliminary Order requirement that the ALJ consider the efficiency of other plants "in the State as a whole" as part of its "big picture" review. Finally, the ALJ and the Commission considered extensive testimony from both the cities and AEP. Because the evidence as a whole is such that reasonable minds could have reached the conclusion that the Commission reached, we conclude that the Commission did not err in determining that Oklaunion costs should be approved. *Charter Med.-Dallas, Inc.*, 665 S.W.2d at 452; *Meier Infiniti*

---

[11] Although the cities argue extensively that the Commission applied the incorrect standard, the cities never argued that the Oklaunion costs were not reasonable and necessary. *See* 16 Tex. Admin. Code § 25.236(d)(1)(A) (2004).

*Co. v. Motor Vehicle Bd.*, 918 S.W.2d 95, 98 (Tex. App.—Austin 1996, writ denied).[12] We overrule the cities' second issue.

## CONCLUSION

We conclude that the Settlement Order was ambiguous with respect to the recovery of pre-commercial costs and that substantial evidence supports the Commission's decision to allow the recovery of pre-commercial costs. Additionally, we conclude that substantial evidence supports the Commission's decision to use NERC GADS data and allow the recovery of Oklaunion costs. Having overruled all of the cities' issues on appeal, we affirm the judgment of the district court.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   September 23, 2004

_____

[12] Additionally, the Docket No. 23477 Preliminary Order was clear that it was preliminary in nature and that the parties were free to raise and address other relevant issues. In the briefing before the evidentiary hearing, the parties argued extensively over the standard to apply to determine the efficiency of the Oklaunion plant. At the hearing itself, the cities presented argument and evidence on this issue. Because the cities had notice that the appropriate standard was at issue, and because the cities were allowed to present evidence at the evidentiary hearing in support of the standard they wished the ALJ to apply, their procedural due process rights were not infringed. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 545 (Tex. App.—Austin 2002, pet. denied); *Madden v. Texas Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 626-27 (Tex. App.—Austin 1983, writ ref'd n.r.e.).