# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-19-00070-CV

**Vergo Patio Gardens, Inc., Appellant**

**v.**

**Railroad Commission of Texas, Appellee**

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-004723, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After considering the motion for rehearing filed by the Railroad Commission of Texas, we deny the motion but withdraw our opinion and judgment issued on February 10, 2021, and substitute the following opinion and judgment in their place.

This appeal arises out of a suit for judicial review of an administrative order. In the underlying administrative proceedings, Vergo Patio Gardens, Inc., applied for the renewal of its landfarm permit, but the Railroad Commission of Texas denied the application. Vergo requested a contested case hearing. A week before the hearing, Vergo and staff for the executive director of the Commission (Staff) filed a joint motion to dismiss the hearing setting pursuant to an attached Rule 11 agreement (the Rule 11 Agreement), but the administrative law judge (ALJ) denied the motion. Following the hearing, the ALJ recommended denying Vergo's application,

and the Commission entered an order to that effect. The district court affirmed. We conclude that the ALJ had a ministerial duty to enforce the Rule 11 Agreement that settled the parties' dispute and that proceeding with the hearing and denying the joint motion to dismiss prejudiced Vergo's substantial rights. We therefore reverse and remand. *See* Tex. Gov't Code § 2001.174(2)(F).

## BACKGROUND

Vergo received its original permit to landfarm in 1986. *See* 16 Tex. Admin. Code § 3.8(a)(25) (2018) (R.R. Comm'n of Tex., Water Protection) (defining "landfarming" as "[a] waste management practice in which oil and gas wastes are mixed with or applied to the land surface in such a manner that the waste will not migrate off the landfarmed area"). In 1998, after amendments and renewals to that permit, Vergo applied to renew and amend its permit under the 1996 version of section 3.8 of title 16 of the Texas Administrative Code (Rule 8). *See* 16 Tex. Admin. Code § 3.8 (1996) (R.R. Comm'n of Tex., Water Protection), *repealed by* 25 Tex. Reg. 6487, 6488 (2000), *adopted by* 38 Tex. Reg. 2318 (2013).[1] Under Rule 8, Staff reviews permit applications and makes the initial decision to approve or deny an unprotested application. *See* Rule 8(d)(6)(D) (1996). Staff notified Vergo that its permit would not expire until the Commission had made a final determination on Vergo's application. *See* Tex. Gov't Code § 2001.054(b). Staff did not take final action on the application until October 2013, when it denied Vergo's application. In a letter, Staff claimed that the information submitted with the application and gathered during the review process demonstrated that Vergo violated Rule 8,

---

[1] Rule 8 has been amended and reorganized over the years. For convenience, we will use "Rule 8" to refer to the 1996 version and cite to this version as "Rule 8 (1996)."

2

mismanaged oil and gas waste, and may cause or allow pollution to surface and subsurface waters at the landfarm property. Vergo then requested a contested case hearing.

The Commission initially set the hearing for February 2014. Vergo filed a motion for continuance, and then the parties filed multiple agreed motions for continuances to conduct discovery, gather samples, and engage in settlement negotiations. The ALJ granted the requests for continuance, ultimately setting the hearing for October 2016. In a letter to the parties, the ALJ stated, "[t]he continuance granted by this ALJ on May 10, 2016 is the last that will be granted" and "[i]f the parties have not reached a settlement by September of 2016, they should prepare to go to hearing." In September, Vergo filed an opposed motion for further continuance and a motion to reconsider the continuance, but the ALJ denied both.

On September 28, the parties filed a joint motion to dismiss the hearing setting, explaining that they "have entered into a Rule 11 Agreement allowing the parties to enter a 60-day binding settlement period" and "request that the hearing setting be removed to allow the parties to resolve this matter without the necessity of a hearing." The parties attached to the dismissal motion their signed Rule 11 Agreement—including exhibits—which provided:

1. A joint motion to dismiss the hearing date of October 3, 2016 shall be filed on or no later than September 30, 2016.

2. Either party shall file a motion to dismiss with prejudice the hearing request to consider denial of permit no. LF-0032 with prejudice against refilling [sic] on December 2, 2016.

3. Vergo waives any and all claims, demands, rights or interests, whether existing or alleged to exist now or at any time in the future, at either the administrative or district court level, relating to the proposed renewal of permit no. LF-0032, or any action of the RRC [the Commission] relating to such permit.

4. Vergo shall agree to the terms of the May 5, 2016 Settlement Agreement ("Draft Permit") attached hereto as Exhibit "A."

3

5.     Vergo shall, within 45 days of October 3, 2016 (i.e., on or before November 17, 2016), provide items 1–8 of Exhibit "B" to counsel for the RRC. Any items completed prior to this 45-day deadline should be submitted as soon as possible. A recommended submission schedule for items 1-8 is attached hereto as Exhibit "C."

6.     Vergo understands that after review and approval by the RRC, items 1-8 of Exhibit "B" will be used to supplement and complete the "Draft Permit." Vergo further understands and agrees that such documents must be submitted in form and substance that meets regulatory requirements of the RRC, and failure to submit documents that meet requirements will result in non-renewal of permit no. LF-0032.

7.     Vergo shall work diligently and cooperatively with RRC Staff to timely submit a stormwater management plan, as referenced in Exhibit "B," within 45 days of October 3, 2016 (i.e., on or before November 17, 2016).

8.     Vergo shall implement a method for stormwater management consistent with RRC methods approved by Staff as summarized and attached hereto as Exhibit "D."

9.     The review and approval period for items 1–8, described in Exhibit "B," shall end 60 days from October 3, 2016 (i.e., on December 2, 2016). All submissions received after 45 days from October 3, 2016 (i.e., after November 17, 2016) are deemed late and shall not be accepted for review of the permit renewal application.

10.     The current permit no. LF-0032, attached hereto as Exhibit "E," shall expire on December 2, 2016 (i.e., 60 days from October 3, 2016).

11.     After December 2, 2016, Vergo shall not continue operations at the subject site unless the RRC issues a renewal landfarm permit.

12.     The 45 and 60 day deadlines shall begin simultaneously on October 3, 2016. The 45-day deadline shall end on November 17, 2016 and the 60-day deadline shall end on December 2, 2016.

In a September 29 letter to the parties, however, the ALJ stated, "I am not inclined to continue the current hearing dates . . . over a hastily drafted Rule 11 Agreement that may be unenforceable. I <u>will</u> continue the current hearing dates if presented with a Rule 11 Agreement with teeth in it."[2] The ALJ then denied the joint motion to dismiss.

---

[2] In the September 29 letter, the ALJ stated two reasons why the Rule 11 Agreement might be unenforceable. First, the ALJ asserted that the second paragraph discussed a hearing

After the hearing, the ALJ issued its proposal for decision (PFD), recommending that Vergo's application be denied and concluding that Vergo failed to prove that renewal of the permit would prevent the pollution of groundwater and surface water resources, as required by Rule 8. The Commission adopted the findings of fact and conclusions of law—substituting one finding of fact to correct a date—and ordered Vergo's application denied. Vergo filed a motion for rehearing challenging Staff's experts and evidence submitted to support the PFD's findings of fact, the ALJ's and Commission's application of Rule 8, and the ALJ's denial of the Rule 11 Agreement settling the case. The Commission denied the motion. Vergo sought judicial review in district court, and the district court affirmed. Vergo now appeals to this Court.

## STANDARD OF REVIEW

"Final orders of the Commission are 'deemed to be prima facie valid and [are] subject to review under the substantial evidence rule.'" *Westlake Ethylene Pipeline Corp. v. Railroad Comm'n*, 506 S.W.3d 676, 681 (Tex. App.—Austin 2016, pet. denied) (quoting *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied)) (alteration in original). The substantial evidence rule, as codified in the Administrative Procedure Act (APA), requires reversal or remand if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law,

---

request to consider *denial* of the permit, but the hearing request is to consider the *renewal* of the permit. Second, the ALJ claimed that the third paragraph is vague and implies that Vergo waives its right of appeal, but there is a "loophole" because some issues "may be fast-tracked straight into the court of appeals, skipping the district court level." The Commission neither raises nor defends the ALJ's stated reasons in its briefing to this Court.

5

(5) are not reasonably supported by substantial evidence, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code § 2001.174(2). "We apply this analysis without deference to the district court's judgment." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.) (citing *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam)).

## DISCUSSION

On appeal, Vergo raises three issues: (1) whether the ALJ erred by breaching its ministerial duty to enter an order dismissing the case when presented with the Rule 11 Agreement and joint motion to dismiss, (2) whether Vergo met its burden to demonstrate that there was no potential for polluting subsurface waters, and (3) whether the Commission met its burden of good cause to terminate Vergo's permit. Because we conclude that the first issue is dispositive of this appeal, we do not address Vergo's other issues. *See* Tex. R. App. P. 47.1, .4.

Texas Rule of Civil Procedure 11 applies only to agreements made during pending litigation, which we have held does not include the course of an administrative proceeding. *See Castillo v. Texas Bd. of Prof'l Eng'rs*, No. 03-10-00124-CV, 2010 WL 5129127, at *4 (Tex. App.—Austin Dec. 14, 2010, no pet.) (mem. op.) ("Because the parties entered into the agreement during the course of the administrative proceeding, it was governed by the provisions of the APA, not by the rules of civil procedure."); *see also* Tex. R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties *touching any suit pending* will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." (emphasis added)). Nevertheless, the APA provides that parties to a contested case may informally dispose

of the matter by agreed settlement, unless precluded by law.  Tex. Gov't Code § 2001.056.  And at the time of the hearing, the Commission's rules provided, "No stipulation or agreement shall be considered unless it is in writing and signed by the parties or their authorized representatives, or dictated into the record during the course of the proceeding."  16 Tex. Admin. Code § 1.123 (2016) (R.R. Comm'n of Tex., Stipulations), *repealed by* 42 Tex. Reg. 1214, 1214 (2017), *adopted by* 42 Tex. Reg. 4131, 4131 (2017).  Because the language of former Rule 1.123 is substantially similar to that of Texas Rule of Civil Procedure 11 and given the lack of case law interpreting former Rule 1.123, we look to case law discussing Rule 11 agreements in our interpretation of former Rule 1.123.  *See Shamrock Psychiatric Clinic, P.A. v. Texas Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam) (concluding that because State Office of Administrative Hearing's Rule 155.415 and Rule 11 "are nearly identical in language," "we agree that cases discussing Rule 11 agreements may guide our interpretation of . . . Rule 155.415").

"Rule 11 agreements are contracts relating to litigation" and "[t]o be effective, a Rule 11 agreement must consist of 'a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement.'"  *Id.* at 560–61 (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)).  In construing a Rule 11 agreement, we apply "the same rules as a contract."  *Id.* at 560 (citing *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.)).  Thus, construing the agreement as a contract, we consider whether the Rule 11 Agreement contained the essential elements to informally dispose of the matter.

Here, there is no dispute that the Rule 11 Agreement was in writing, signed by the parties, and filed in the administrative proceeding.  *See id.* at 561 (noting that agreement was in

writing, signed, and filed with court as required by rules). The Commission describes the Rule 11 Agreement as "an agreement-to-attempt-to-agree to settle" and argues that "the Rule 11 agreement was not itself a settlement of the issues" but "merely provided for the possibility of settlement if certain underlying conditions were met." We disagree. The Rule 11 Agreement provides that Vergo "shall" agree to the terms of the attached draft permit; that Vergo "shall" provide necessary items and "shall" take certain actions for the Commission to supplement and complete the draft permit; that Vergo's failure to provide the documents "will result in non-renewal of permit"; that the attached permit to the Rule 11 Agreement "shall" expire on December 2; and that Vergo "shall not" continue operations after December 2 without receiving a renewal landfarm permit. Under the Rule 11 Agreement, nothing is left for Vergo to agree to; the essential elements of the agreement are in place. If Vergo failed to perform, it would result in a nonrenewal of the permit; if Vergo did perform, the Commission would supplement and complete the permit. *See Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The word 'shall' as used in contracts is generally mandatory, operating to impose a duty." (citing *Roberts v. Clark*, 188 S.W.3d 204, 210 (Tex. App.—Tyler 2002, pet. denied))). Moreover, under either scenario, Vergo has waived its "claims, demands, rights or interest" relating to the renewal of the permit or to any action taken by the Commission related to the permit under the Rule 11 Agreement. And Exhibit B of the Rule 11 Agreement expressly states, "By participating in the Rule 11 Agreement, Vergo Patio Gardens relinquishes all rights to a hearing regarding the renewal of Permit no. LF-0032."

The Commission's only explanation for why the Rule 11 Agreement did not settle all the issues related to the permit renewal is that "the Rule 11 agreement specifically references a separate settlement agreement that was yet to be signed by Vergo." But the referenced

8

"separate settlement agreement"—Exhibit A of the Rule 11 Agreement—is a draft permit titled "PERMIT TO LANDFARM CERTAIN NONHAZARDOUS OIL AND GAS WASTES." Exhibit A does not require Vergo's signature: the only signature block was for a Commission manager, and above the signature block it states, "This authorization is granted subject to review and cancellation should investigation show that such authorization is being abused." Vergo's signature was not required for the referenced "separate settlement agreement"—i.e., the renewal permit—to be issued. *See* Rule 8(d)(6)(A) (1996) (providing that permits are *issued* by Commission). Accordingly, we conclude that the Rule 11 Agreement contained the essential elements to informally dispose of the matter.[3]

The Texas Supreme Court recently explained that administrative law judges generally have a ministerial duty to enforce a valid Rule 11 agreement. *See Shamrock Psychiatric Clinic*, 540 S.W.3d at 562. The relevant background facts of *Shamrock Psychiatric Clinic* are as follows. Shamrock and the Texas Health and Human Services Commission's Office of Inspector General corresponded regarding consolidating a "payment-hold case with the soon-to-be-filed overpayment-recoupment case," which was memorialized in the Inspector General's status report and in the administrative law judge's order relying on that report to continue the hearings. *Id.* at 556–57, 561. Nevertheless, the Inspector General later sent Shamrock a final notice of overpayment, which included notice of a 15-day appeal requirement, but Shamrock did not timely appeal. *Id.* at 557. The Inspector General "notified Shamrock of the State's intent to dismiss the overpayment and payment-hold cases due to Shamrock's failure" to timely appeal, and Shamrock responded with a letter referencing their agreement to

---

[3] For these reasons, we also disagree with the stated rationale of the ALJ in describing the Rule 11 Agreement as potentially unenforceable.

9

consolidate the cases. *Id.* "Disregarding the letter," the Inspector General filed a motion to dismiss the pending case. *Id.* The administrative law judge initially denied the motion, finding that the parties had entered into an "agreement that the payment hold and final notice of overpayment cases would be heard together." *Id.* But the Inspector General then withdrew its "payment-hold case" and argued that the administrative law judge no longer had jurisdiction to enforce the agreement because no contested case was pending on either issue. *Id.* at 558. The administrative law judge then dismissed the case. *Id.* Shamrock sued in district court for "a writ of mandamus directing the administrative law judge to enforce the alleged Rule 11 agreement between the parties," alleging that the administrative law judge "had a ministerial duty to enforce or abide by the Rule 11 agreement created by the parties' communications." *Id.* at 558–59.

The Texas Supreme Court, interpreting the Rule 11 agreement as a contract, concluded that a valid Rule 11 agreement existed and that it was complete within itself and contained the essential elements of the agreement. *Id.* at 561. The Court then noted, "[t]he power to conduct adjudicative proceedings necessarily includes . . . 'the power to accept and act upon an agreement between the parties that removes from dispute and litigation a subsidiary issue of fact or law'" and "[w]ielding this power is not only a judge's right, but a judge's responsibility," given the "'ministerial duty to enforce a valid Rule 11 agreement.'" *Id.* at 561–62 (quoting *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *Cities of Abilene v. Public Util. Comm'n*, 146 S.W.3d 742, 747 (Tex. App.—Austin 2004, no pet.)). Accordingly, the Court concluded that "the administrative law judge failed to perform a purely ministerial act" to enforce the Rule 11 agreement. *Id.* at 562.

Following *Shamrock Psychiatric Clinic*, we conclude here that the ALJ likewise failed to act in accordance with this responsibility and abused its discretion by failing to comply

with its ministerial duty. The Commission argues that the joint motion to dismiss did not request that the ALJ dismiss the case; instead, the joint motion "merely asked the ALJ to 'remove' the hearing setting to allow the parties to enter settlement negotiations." But the joint motion described the Rule 11 Agreement as "allowing the parties to enter a 60-day *binding* settlement period" for the provision of additional information to "supplement" and "complete" the renewal permit and requested that the hearing setting be removed "to allow the parties to resolve this matter without the necessity of a hearing." (Emphasis added.) Accordingly, we construe the joint motion not as a request to allow settlement negotiations, but as a request to enforce the Rule 11 Agreement to resolve the dispute by settlement agreement, not by hearing.

The Commission also claims that "[r]egardless, Vergo waived its complaint by failing to adequately state it in its motion for rehearing." "The motion for rehearing is a statutory prerequisite to an appeal in a contested case and must be sufficiently definite to notify the agency of the error claimed so that the agency can either correct or prepare to defend the error." *Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 444–45 (Tex. App.—Austin 2011, pet. denied) (internal citations omitted); *see* Tex. Gov't Code § 2001.145 (providing that "[a] timely motion for rehearing is a prerequisite to an appeal in a contested case"). "The standard is one of fair notice" and does not require "a briefing of the law or facts." *Scally*, 351 S.W.3d at 445. The Commission asserts that Vergo did not mention in its rehearing motion "the legal basis that Vergo now raises: that the ALJ had [a] 'ministerial duty to enforce' the Rule 11 agreement to dismiss the case." But Vergo's rehearing motion had a section titled "***Denial of Settlement Agreement***" and expressly stated that "the parties entered into a Rule 11 Agreement settling this case"; "the [ALJ] refused to enter the agreement"; the parties were "forced" "to utilize their resources trying this case" and "to attend a three-day hearing"; and "the ALJ wrongfully denied

11

the settlement agreement." We conclude that Vergo's rehearing motion met the standard of fair notice on the legal issue of whether the ALJ should have enforced the Rule 11 Agreement. *Compare, e.g.*, *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 398 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (finding waiver), *with Morgan v. Employees' Ret. Sys.*, 872 S.W.2d 819, 821 (Tex. App.—Austin 1994, no writ) (concluding error preserved).

In sum, the parties entered into a voluntary settlement agreement,[4] but the ALJ refused to enforce the agreement by proceeding with the contested case hearing. Vergo preserved error and presented the ALJ's error to the Commission in its rehearing motion, but the Commission entered an order denying the permit application based on the hearing and resulting PFD. In so doing, Vergo's substantial rights—including those created by the Rule 11 Agreement—were prejudiced because Vergo was "forced" "to attend a three-day hearing" and "utilize [its] resources trying this case" when the dispute had already been settled by the Rule 11 Agreement. We therefore hold that the administrative decision was "arbitrary and capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion," and the APA requires that we reverse and remand this case. *See* Tex. Gov't Code § 2001.174(2)(F).

### THE COMMISSION'S MOTION FOR REHEARING

In its motion for rehearing, the Commission argues that this Court's decision "realign[s] the balance of power between the parties and the [ALJ] in an administrative

---

[4] "It is the policy of this state to encourage the peaceable resolution of disputes[.]" Tex. Civ. Prac. & Rem. Code § 154.002; *see Transport Ins. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995) (noting that "[p]ublic policy favors the amicable settlement of controversies" because settlement "avoid[s] the uncertainties regarding the outcome of litigation, and the often exorbitant amounts of time and money to prosecute or defend claims at trial"); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997) ("Texas law favors and encourages voluntary settlements and orderly dispute resolution.").

proceeding" and that "[u]ntil now, ALJs—like all tribunals—had the power to manage their dockets and grant or deny continuances in the sound exercise of their discretion." But the Commission reads our opinion too broadly. This opinion is limited to a narrow and unusual set of facts and does not generally impinge on the power and discretion of ALJs to grant or deny continuances. Here, the motion to dismiss the hearing was a *joint* motion with the Rule 11 Agreement attached, the motion expressly stated that the parties "have entered into a Rule 11 Agreement allowing the parties to enter a 60-day binding settlement period" and "request[ed] that the hearing setting be removed to allow the parties to resolve this matter without the necessity of a hearing," and the attached Rule 11 Agreement removed from dispute and litigation the issues of fact and law. Contrary to the Commission's assertion, the joint motion is not "a thinly disguised seventh motion for continuance reliant upon the Agreement as evidence."[5] And the ALJ's power includes "'the power to accept and act upon an agreement between the parties that removes from dispute and litigation a subsidiary issue of fact or law,'" and "[w]ielding this power is not only a judge's right, *but a judge's responsibility*." *Shamrock Psychiatric Clinic*, 540 S.W.3d at 562 (quoting *Cities of Abilene*, 146 S.W.3d at 747) (emphasis added).

---

[5] The Commission argues that "[n]o unambiguous request to enforce [the Rule 11 Agreement] occurred here," that "the term 'enforce' does not appear in the Motion," and that "the ALJ construed the Motion differently from the Court." But there was no need to request the ALJ to "enforce" the Rule 11 Agreement against one of the parties because the motion was a *joint* motion. And the ALJ's September 29, 2016 letter to the parties demonstrates that the ALJ construed the joint motion as "based upon a Rule 11 Agreement entered into by the parties" and as a request to enforce that agreement, as evidenced by the ALJ declining that request because the Rule 11 Agreement "appears to be unenforceable" and because the parties needed to present the ALJ "with a Rule 11 Agreement with teeth in it." We do not agree with the Commission that "by using the template blessed by th[is] opinion, parties are in control of the docket" and that "nothing in th[is] opinion prevents the parties in *any* case entering into a "Rule 11 agreement' and obtaining their preferred schedule because the ALJ has a ministerial duty to grant the motion." Our opinion is limited to the filing of a joint motion that attaches a binding Rule 11 agreement that removes the disputed issues from litigation.

13

The Commission also argues that Vergo's complaint is moot because "[t]he Rule 11 Agreement required Vergo to submit several outstanding permitting documents, which it failed to do by the agreed-upon deadline of November 17, 2016, or at any time since," and therefore "Vergo failed to perform under the Agreement."[6] Vergo responds that "the Rule 11 Agreement was erroneously nullified," "the [Commission] cannot hold Vergo to the dates specified in the Agreement when the Examiner struck it down," and "Vergo's allotted time to produce the material documents should start upon completion of this Appeal, when the Rule 11 Agreement is enforced." But to the extent these questions regarding failure to perform, agreement nullification, or deadlines for submitted documents are relevant and can be raised, they should be addressed on remand, not here; in a suit for judicial review of an agency action, we are "empowered to issue only a general remand when [we] find[] error that prejudices an appellant's substantial rights." *Freightliner Corp. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 255 S.W.3d 356, 361 (Tex. App.—Austin 2008, pet. denied) (quoting *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.)); *see id.* at 362 (noting courts generally are not authorized "to dictate *how* an agency conducts its review of remanded issues or decides them"); *see also* Tex. Gov't Code § 2001.174(2).

Our conclusion here is that the September 29, 2016 administrative decision to deny the parties' joint motion to dismiss the hearing setting when the parties had removed

---

[6] The Commission also argues that Vergo "could have sought reconsideration," "file[d] an interlocutory appeal of the ALJ's ruling on the Motion to the Commission," or "even sought mandamus relief directing the ALJ to enforce the Rule 11 to prevent Vergo from suffering the expense and time of a wholly unnecessary hearing." Although the Commission may be correct that these paths were available to Vergo and perhaps these paths would have been a more prudent and efficient approach, the Commission has not cited any authority supporting the proposition that the failure to seek reconsideration, interlocutory appellate relief, or mandamus relief waives Vergo's right to raise this issue on appeal when it has raised the issue in its motion for rehearing before the Commission.

from dispute and litigation the issues of fact and law and to proceed with the scheduled October 3, 2016 hearing—just four days after the administrative decision—prejudiced Vergo's substantial rights. Any subsequent failure to comply with the Rule 11 Agreement does not moot the question of whether Vergo's substantial rights were prejudiced by being "forced" "to attend a three-day hearing" and "utilize [its] resources trying this case" when the dispute had already been settled by the Rule 11 Agreement. A decision to the contrary will disincentivize settlement in the administrative process: it will inject uncertainty into settlement negotiations as to whether ALJs will dismiss scheduled hearing settings—unquestionably an important settlement factor given the costs associated with hearings—when the parties submit a joint motion and a Rule 11 agreement that removes from dispute and litigation the issues of fact and law to be addressed at that hearing.

## CONCLUSION

For these reasons, we reverse and remand for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Reversed and Remanded on Rehearing

Filed: April 22, 2022

15